# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 2016-0009 |
| ) | |
| SERGIO QUINONES-DAVILA, et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**Attorneys:**
**Alphonso G. Andrews, Jr., Esq.,**
St. Croix, U.S.V.I.
  *For the United States*

**Kye Walker, Esq.,**
St. Croix, U.S.V.I.
  *For Defendant Sergio Quinones-Davila*

## MEMORANDUM OPINION AND ORDER

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Motion for Daily Transcripts" ("Motion"), filed by Defendant Sergio Quinones-Davila ("Quinones-Davila") on March 26, 2018. (Dkt. No. 1309). The filing was in response to an Order entered on March 22, 2018, in which the Court memorialized deadlines that had been set at a status conference held on March 21, 2018. (Dkt. No. 1298). At that status conference, Quinones-Davila made an oral motion, joined by Defendants Jose R. Hodge, Omy A. Gutierrez-Calderon, Anibal A. Vega-Arizmendi, Jesus Burgos-Montanez, and Jean Carlos Vega-Arizmendi, for daily transcripts of the testimony of certain witnesses at the retrial of this matter, scheduled to begin on April 30, 2018. In accordance with the Court's March 22, 2018 Order, Quinones-Davila filed the instant Motion "identifying the daily transcript requests he intends to make at trial and providing the grounds for his requests." *Id.*

In his Motion, Quinones-Davila asks the Court to authorize daily transcripts of the direct and cross-examination testimony of certain Government witnesses expected to testify at the retrial of this matter—Drug Enforcement Administration ("DEA") Special Agent Brian Gaumond, the case agent; DEA Special Agent Jeremy Latchman; DEA Task Force Officer Aldemar Santos; DEA Task Force Officer Daniel Rivera; and Confidential Sources Timothy Schoenbohm and Troy Nisbett. (Dkt. No. 1309). Quinones-Davila states that the transcripts are needed

> to prepare effective cross-examination of the Government's key witnesses, for the impeachment of witnesses who will testify throughout the Government's case and over the course of several days, to curb the mental exhaustion of counsel in attempting to remember witness testimony and in attempting to take exhaustive notes, to use in evidentiary arguments at sidebar, to prepare closing arguments, and to prepare arguments to support motions for judgment of acquittal.

*Id.* at 1. Quinones-Davila adds that he is filing his Motion "pursuant to the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution," citing *Griffin v. Illinois*, 351 U.S. 12 (1956), *Britt v. North Carolina*, 404 U.S. 226 (1971), and *Calhoun v. Foerster*, 656 F. Supp. 492, 496 (E.D. Pa. 1987). *Id.* at 1-2. Defendant Jose R. Hodge filed a Notice of Joinder in Quinones-Davila's Motion. (Dkt. No. 1310).

For the reasons that follow, the Court will deny the Motion for Daily Transcripts, except as it pertains to Troy Nisbett.

## I. BACKGROUND

As a brief background, Quinones-Davila's counsel was appointed under the Criminal Justice Act ("CJA") to represent him in this case. (Dkt. No. 50 in 2015-cr-0042).[1] The initial trial of Quinones-Davila and five co-Defendants on charges of conspiracy, and attempted possession and possession of cocaine with intent to distribute, lasted seven weeks—from May 22-July 7,

---

[1] Counsel for the other five co-Defendants were also appointed under the CJA to represent their respective clients.

2

2017—and ended with the declaration of a mistrial.[2] During the trial, the Court granted Defendants' motions for, and counsel received copies of, daily transcripts of the testimony of four of the six Government witnesses for whom Defendants seek daily transcripts in the retrial: Schoenbohm, Gaumond, Santos, and Rivera.[3] Defendants did not request a daily transcript for Latchman, and Nisbett did not testify.

On February 14, 2018, counsel for Quinones-Davila filed the requisite paperwork under the CJA for the production of the entire transcript of the first trial. The Court granted the request, except for the portions of the transcript covering the jury voir dire, some of the parties' opening statements, closing arguments, and jury instructions.[4] The various volumes of the transcript approved for production by the Court were provided to counsel for Quinones-Davila between March 1, 2018 and March 16, 2018.[5]

## II. DISCUSSION

The Guide to Judiciary Policy, Vol. 7 Defender Services, Part A Guidelines for Administering the CJA and Related Statutes, Chapter 3: Authorization and Payment for Investigative, Expert, or Other Services, describes the policy for providing daily (or accelerated) transcripts in section 320.30.20. That section contains a resolution adopted by the Judicial Conference in March 1980, modified in September 1986, which provides:

---

[2] Jury selection occurred from May 1-3, 2017.

[3] The daily transcripts totaled 1,048 pages.

[4] In view of the fact that opening statements and closing arguments are not evidence, and all counsel were provided copies of the jury voir dire questions and the jury instructions, the Court in effect authorized essentially the entire transcript of the first trial. The authorized trial transcript totaled 4,996 pages.

[5] The full transcript was available to all counsel as of those dates and was provided to them upon their proper request.

> [T]he furnishing of accelerated transcript services in criminal proceedings should be discouraged; however, recognizing that there are some circumstances in which such transcript services are necessary and required by either the prosecution or the defense, or both, accelerated transcript services may be provided.

Guide to Judiciary Policy, Vol. 7, Ch. 3, § 320.30.20. As Quinones-Davila correctly notes, "the provision of daily transcripts is committed to the discretion of the trial judge." (Dkt. No. 1309 at 5); *see United States v. Bari*, 750 F.2d 1169, 1181 (2d Cir. 1984) ("[T]he decision to supply daily transcripts to indigent defendants is a matter within the discretion of the trial judge.").

Quinones-Davila frames his argument for daily transcripts in Constitutional terms, suggesting that a denial of daily transcripts under the circumstances here would violate Quinones-Davila's Fifth, Sixth, and Fourteenth Amendment rights. (Dkt. No. 1309 at 1-2). He cites *Griffin v. Illinois*, which involved the rights of indigent defendants who could not afford trial transcripts and was thus prevented from receiving appellate review. He also cites *Britt v. North Carolina*, where an indigent defendant—preparing for a retrial of his murder charge—could not afford a transcript of his first trial that had ended in a mistrial. While the Supreme Court in *Britt* opined that "the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal," 404 U.S. at 227, the Court ultimately concluded that the lower court did not err in rejecting defendant's request for a transcript under the circumstances presented. In so concluding, the Supreme Court identified two factors for determining whether an indigent defendant has a right to a free transcript: (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought; and (2) the availability of alternative devices that would fulfill the same functions as the transcript. *Id.* at 227.[6]

---

[6] In the third case cited by Quinones-Davila, *Calhoun*, the district court, in a Court Order, memorialized an agreement between plaintiffs (former indigent defendants) and county officials that indigent defendants would be provided transcripts of all preliminary hearings at no cost. 656 F. Supp. at 493. The reference to "due process, equal protection, confrontation and cross-

4

Quinones-Davila employs the two *Britt* factors in arguing for daily transcripts. First, as to the value of the daily transcripts, he contends that they will be helpful in this matter because the trial will last several weeks with several witnesses testifying over a period of time, which presents opportunities for impeachment. He also asserts that some of the testimony is technical, regarding the use of listening devices and downloading audio from these devices, such that a daily transcript will help in keeping track of the various functions of these devices. In addition, Quinones-Davila maintains that daily transcripts would be useful to fashion objections, evidentiary arguments, cross-examination, and closing and Rule 29 arguments, as well as to cross-reference a witness' testimony with the voluminous discovery and prior testimony. (Dkt. No. 1309 at 6).

With regard to the availability of alternative devices factor, Quinones-Davila claims that "there are no adequate alternatives to the daily transcripts he requests." *Id.* at 7. He asserts that his counsel is CJA appointed, and thus he does not have available to him a team of lawyers or paralegals to take notes of the testimony of various witnesses. *Id.*

Based on the foregoing considerations, Quinones-Davila concludes that he needs daily transcripts "to effectively defend against the charges levied against him during the lengthy trial of this multi-defendant, complex matter." *Id.* The Court disagrees.

As a preliminary matter, it is worthy of mention that the Supreme Court cases—*Griffin* and *Britt*—upon which Quinones-Davila relies to invoke the United States Constitution, did not involve requests for daily transcripts.[7] Thus, those cases did not establish with any certainty that

---

examination" is not a quote, as Quinones-Davila represents, from the Court Order, but from Plaintiffs' Memorandum in Support of the Motion for Approval of a Consent Decree that was attached as Appendix C to the Order, although not referenced in the Order. (Dkt. No. 1309 at 2, quoting *Calhoun*, 656 F. Supp. at 496).

[7] Similarly, *Calhoun v. Foerster*, 656 F. Supp. 492, 496 (E.D. Pa. 1987), upon which Quinones-Davila also relies in invoking the Constitution, did not involve daily transcripts.

Constitutional rights are implicated when requests for daily transcripts are at issue. Indeed, while the Supreme Court in *Britt* concluded that there was no doubt that the equal protection principle established in *Griffin* and its progeny required the State to "provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal," it acknowledged that "the outer limits of that principle are not clear." 404 U.S. at 227. Accordingly, the framing of this matter at the outset as a Constitutional issue based on *Griffin* and *Britt*—especially under the particular circumstances here—is misguided. *See United States v. Scarpa*, 691 F. Supp. 635, 636 (E.D.N.Y. 1988) ("The right of an indigent defendant to a daily transcript is not guaranteed by the Constitution. The failure to provide it at government expense violates neither the due process nor the equal protection clause.") (citing *United States v. Sliker*, 751 F.2d 477, 491 (2d Cir. 1984)).[8]

In any event, this Court arrives at a different conclusion than Quinones-Davila regarding the need for daily transcripts when the two factors identified in *Britt* are considered. With regard to the value of the daily transcripts, the arguments advanced by Quinones-Davila lose their potency here because this will not be the first trial in this matter, but a *re*trial. Thus, this will not, for the most part, be the first time that Defendants are exposed to the trial testimony, evidentiary issues, and other aspects of the proceedings. Moreover, and more importantly, not only did Defendants have daily transcripts of the testimony of individuals they identified as "key" witnesses during the first trial, but they have since been provided—upon request and submission of appropriate documentation—with copies of essentially the entire trial transcript in preparation for the second trial. While Quinones-Davila cites a bevy of civil and criminal cases to emphasize the point that

---

[8] Quinones-Davila later acknowledges that providing daily transcripts is within the discretion of the trial judge. (Dkt. No. 1309 at 5).

courts may be inclined to permit daily transcripts in lengthy and complex cases (Dkt. No. 1309 at 5-6), *none* of the cases cited by Quinones-Davila involves a situation such as this where a request is being made for daily transcripts for a retrial where counsel had the benefit of daily transcripts to prepare for their cross-examination of witnesses at the initial trial, and now have the benefit of the full transcript of the first trial as they head into the retrial.[9] The particular circumstances of this case—which make it vastly different from the cases upon which Quinones-Davila relies—render the cases cited by Quinones-Davila inapposite and of little or no utility to the present analysis. Accordingly, the value of the daily transcripts, under the circumstances here, is greatly diminished.

With regard to the availability of alternative devices, Quinones-Davila conclusorily asserts that there are "no adequate alternatives" to daily transcripts. The Court rejects that conclusion, especially since Quinones-Davila does not even mention having received the full transcript from the first trial, let alone address the obvious question of why that transcript does not suffice. Quinones-Davila's conspicuous silence on this issue is telling. The clear answer is that the full transcript from the first trial is certainly sufficient to enable the preparation of an effective defense at the retrial of this matter.

The picture painted by Quinones-Davila's Motion—which almost gives the impression that Defendants are embarking on this trial for the first time—does not reflect the reality of the circumstances here. In actuality, one would expect that the Government's witnesses for whom

---

[9] Quinones-Davila cited, *inter alia*, an unreported court order in *United States v. McQuiddy*, Crim. No. 3:09-CR-00240 at *3 (M.D. Tenn. 2013), in support of both prongs of his argument under the *Britt* factors. In *McQuiddy*, which involved fourteen defendants being tried on thirty-seven counts involving seventeen separate incidents, the court concluded that daily transcripts were necessary for effective trial preparation. However, *McQuiddy* is also inapposite because it does not involve a retrial in which Defendants have the benefit of the transcript of the original trial. Indeed, the court's grant of daily transcripts in *McQuiddy* is no different from this Court's grant of such transcripts for the first trial in this matter.

7

Defendants seek daily transcripts in the retrial will testify in substantially the same manner during the retrial as they did in the first trial. And, if they do not, Defendants would be armed with the transcript from the first trial for purposes of impeachment.[10] Accordingly, the transcript of the first trial gives Defendants a roadmap of the Government's case—complete with the testimony under oath of Government witnesses who were cross-examined by up to six defense counsel who all had access to daily transcripts during the first trial to prepare for their respective cross-examinations. The transcript of the first trial that Defendants have in hand will thus allow them to prepare in a manner much like what counsel suggests—for cross-examination and impeachment, for technical testimony, evidentiary objections, sidebar arguments, closings, and Rule 29 motions—and is certainly sufficient to provide an "adequate alternative" to daily transcripts.

In sum, the Court concludes that, under the circumstances, "it is entirely practicable to present an effective defense in [this] criminal case without daily copy, however convenient daily copy undoubtedly is." *Sliker*, 751 F.2d at 491 (also holding that "the failure to provide defendant with daily copy at the government's expense violated neither the due process nor the equal protection considerations that have governed the Supreme Court's decisions in this area."); *accord United States v. Tomkins*, 2013 WL 80365, at * 7 (N.D. Ill. Jan. 4, 2013); *Scarpa*, 691 F. Supp. at 636. In view of the facts here, it appears to the Court that Defendants are seeking daily transcripts during the retrial simply for convenience—to relieve counsel of having to take *any* notes and keep track of *any* differences in the testimony of certain witnesses between the first trial and the retrial.

---

[10] That there is likely to be some variance in the testimony is a far cry from any suggestion that the retrial will be akin to facing a trial in the first instance. The need for counsel to take sufficient notes to keep track of such variances is not of the magnitude that should call into question Defendants' ability to effectively defend against the charges. Contrary to Quinones-Davila's contention, under the circumstances here, he does not need a team of lawyers or paralegals to take notes in the absence of daily transcripts.

If the Court were to find that daily transcripts are justified under circumstances such as these, the policy set forth in the CJA Guide of discouraging such transcripts would be flouted at every turn. Daily transcripts under these circumstances—far from being a Constitutional imperative—would be an inordinate luxury that the Court could not justify as an exercise of its sound discretion. *See Sliker,* 751 F.2d. at 491.

In view of the foregoing, the Court will deny Quinones-Davila's motion for daily transcripts for witnesses who testified in the first trial: Schoenbohm, Gaumond, Santos, Latchman, and Rivera.

Quinones-Davila's motion for daily transcripts of the testimony of Confidential Source Troy Nisbett stands on a different footing. Nisbett did not testify in the first trial, and thus there is no transcript of his testimony which defense counsel can use to prepare for, and rely upon during, the retrial. Accordingly, the Court will exercise its discretion and order the preparation of daily transcripts for Confidential Source Troy Nisbett during the retrial, should he testify.

## ORDER

**UPON CONSIDERATION** of the foregoing, it is hereby

**ORDERED** that Quinones-Davila's Motion for Daily Transcripts (Dkt. No. 1309) is **GRANTED IN PART AND DENIED IN PART**; and it is further

**ORDERED** that the Motion is **GRANTED** to the extent that the Court Reporter shall provide daily transcripts of the testimony of **TROY NISBETT**; and it is further

**ORDERED** that the Motion is **DENIED** in all other respects.

**SO ORDERED.**

Date: April 19, 2018 _____/s/_____
WILMA A. LEWIS
Chief Judge