# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JESUS BURGOS-MONTANEZ, et al., )<br>)<br>Defendants. )<br>_____ ) | Criminal Action No. 2016-0009 |

**Attorneys:**
**Alphonso G. Andrews, Jr., Esq.,**
St. Croix, U.S.V.I.
**Everard E. Potter, Esq.,**
St. Thomas, U.S.V.I.
    *For the United States*

**Yohana M. Manning, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Jesus Burgos-Montanez*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

This matter comes before the Court on Defendant Jesus Burgos-Montanez's ("Burgos-Montanez") "Memorandum of Law re: Limitations of [Federal] Rule [of Evidence] 801(d)2(E)" ("Memorandum") (Dkt. No. 1450), filed in response to the Court's May 9, 2018 Order (Dkt. No. 1449); the Government's Response opposing Burgos-Montanez's Memorandum ("Response") (Dkt. No. 1454); Burgos-Montanez's Reply to the Government's Response ("Reply") (Dkt. No. 1455); and Burgos-Montanez's Supplemental Memorandum of Law ("Supplement") (Dkt. No. 1479).

In his Memorandum, Burgos-Montanez argues that "statements [of alleged coconspirators] made about unrelated, concluded events are not admissible against him in this conspiracy trial" as non-hearsay statements under Federal Rule of Evidence 801(d)(2)(E) ("Rule 801(d)(2)(E)"). (Dkt. No. 1450 at 1). Burgos-Montanez further argues that the Government has identified "various independent events [which] define the scope of the evidence," and that evidence related to events

occurring prior to the time he allegedly joined the conspiracy should not be admitted against him as they involve conduct that was unforeseeable to Burgos-Montanez "based on his role and the scope of his alleged participation" in the conspiracy. (Dkt. No. 1455 at 1-2). Alternatively, Burgos-Montanez seeks to preclude "statements unrelated to the event he allegedly participated in" under Federal Rule of Evidence 403. (Dkt. No. 1450 at 6). He "seeks limiting instructions on all statements and evidence [related to events occurring] prior to the time [he] purportedly joined the alleged conspiracy." *Id.* at 8.

Defendant Omy A. Gutierrez-Calderon joins in Burgos-Montanez's request for limiting instructions, where applicable to him. (Dkt. No. 1453). Defendant Sergio Quinones-Davila ("Quinones-Davila") objects to Burgos-Montanez's request for a "limiting instruction of the nature proposed," arguing that such an instruction would prejudice Quinones-Davila "as it essentially directs the jury's attention to him with regards to the bulk of the evidence presented by the Government." (Dkt. No. 1451 at 1).[1] The Government opposes Burgos-Montanez's request for limiting instructions. (Dkt. No. 1454 at 1-2). For the reasons that follow, the Court will deny without prejudice Burgos-Montanez's request for limiting instructions on all statements and evidence related to events occurring prior to the time he purportedly joined the alleged conspiracy.

## I. BACKGROUND

Burgos-Montanez is charged with two counts in a six-count Second Superseding Indictment ("Indictment") filed on February 21, 2018. (Dkt. No. 1216). Count 1 charges Burgos-Montanez with conspiracy to possess a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A)(ii), and 846, alleging that "[f]rom on or about January 2014 until on or about March 2016," Burgos-Montanez and others "did conspire and agree with one another . . . to knowingly

---

[1] Because Quinones-Davila has cited no legal authority for this proposition and the Court is unaware of any, his objection will be overruled. Accordingly, Burgos-Montanez's motion to strike Quinones-Davila's objection to the request for limiting instructions on the grounds that Quinones-Davila does not have standing to object to the request will be denied as moot.

and intentionally possess, with intent to distribute, more than five kilograms of a mixture and substance containing a detectible amount of cocaine hydrochloride (cocaine powder) . . . and a detectible amount of marijuana . . . ." *Id.* at 3. The Indictment further alleges that as part of the agreement, some of the charged Defendants travelled by boat south of St. Croix to effect the mid-sea retrieval of cocaine, returned to St. Croix with the drugs, and transshipped them to Puerto Rico. It asserts that some of the Defendants' attempts—which are described in the Indictment as "events"—were successful and some were unsuccessful.

Count 6 charges Burgos-Montanez with possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 18 U.S.C. § 2, alleging that "[o]n or about November 14, 2015," Burgos-Montanez and others "while aiding and abetting each other, did knowingly and intentionally possess, with intent to distribute, more than five kilograms of a mixture and substance containing a detectible amount of cocaine hydrochloride (cocaine powder) . . . ." *Id.* at 13.

The first trial in this matter resulted in a mistrial in July 2017. A second trial began on April 30, 2018. The issues addressed in this Opinion were initially raised by Burgos-Montanez in the form of an oral objection by his counsel at trial on May 9, 2018, followed by the written submissions identified above.

## II. DISCUSSION

In his Memorandum, Burgos-Montanez argues that conspiracy liability extends only to the "foreseeable actions of [alleged coconspirators] that occur in the future and not the past." (Dkt. No. 1450 at 2). He asserts that because the Government alleges he "joined the conspiracy less than 24 hours before he was arrested on the seventh [] and final event" charged in the Indictment, the statements of alleged coconspirators made in relation to events occurring before he allegedly joined the conspiracy are "not admissible under the co-conspirator exception to the hearsay rule, because at

the time they were made, [he] was not alleged to have been a conspirator nor is it alleged that he even knew about [the conspiracy]." *Id.* at 2-3. Burgos-Montanez argues that evidence admitted against him "must be specific to the scope of the unlawful objective that [he] allegedly agreed to participate in," and that the scope of his own purported agreement is limited to the alleged mid-sea retrieval of 87 kilograms of cocaine during a November 14, 2015 event charged in Count 6 of the Indictment. (Dkt. No. 1455 at 1).

The Government counters by arguing that the line of cases following the Supreme Court's decision in *Pinkerton v. United States*, 328 U.S. 640 (1946), establish that a person who joins a conspiracy is considered to have adopted the prior acts and declarations of conspirators such that evidence related to those prior acts and declarations is admissible against all members of the conspiracy. (Dkt. No. 1454 at 2-3). Burgos-Montanez responds that while he does not dispute the "underlying principle" that "in an ongoing single event conspiracy, one looks at the scope of the agreement of the Defendant to determine all of the evidence which is admissible against him," the Government's decision in this case to identify "various independent events"—some of which had concluded before he allegedly joined the conspiracy—limited the scope of the evidence admissible against him to the single event he allegedly participated in. (Dkt. No. 1455 at 2-5). In his Supplement, Burgos-Montanez takes this argument one step further, arguing that he is charged in a "hub and spoke" conspiracy, and that the evidence at trial will fail to demonstrate interdependence among the different spokes of the conspiracy. (Dkt. No. 1479 at 1-2). He therefore asserts that evidence related to events occurring before the time he allegedly joined the conspiracy are "irrelevant and immaterial" to the Government's case against him. *Id.* at 2.

    **A.**    **Single or Multiple Conspiracies**

As an initial matter, the Court observes that, to the extent Burgos-Montanez argues that the evidence at trial will prove, at most, that he agreed to participate in one alleged mid-sea retrieval of

4

cocaine—and not in the broader conspiracy charged in Count 1—Burgos-Montanez appears to anticipate that there will be a variance between the conspiracy charged in the Indictment and the evidence introduced at trial.[2] A variance occurs where "a single conspiracy is alleged in [an] indictment . . . [but] the evidence at trial proves only the existence of multiple conspiracies." *United States v. Kelly*, 892 F.2d 255, 258 (3d Cir. 1989) (citing *United States v. Smith,* 789 F.2d 196, 200 (3d Cir. 1986), *cert. denied,* 479 U.S. 1017 (1986)). In effect, Burgos-Montanez argues that because evidence adduced at trial allegedly limits his purported participation to only a single event in November 2015, the Government cannot claim that he participated in the charged conspiracy—which includes independent events that occurred prior to his alleged participation—but at most, that he entered into a "separate agreement [with] its own distinct [] end." *See Blumenthal v. United States*, 332 U.S. 539, 558 (1947) (noting that multiple conspiracies may be found where there are multiple agreements that are "distinct and disconnected, not parts of a larger general scheme," and those agreements are never drawn "all together in a single, over-all, comprehensive plan").

The Government's presentation of its case-in-chief is currently on-going. Consequently, although Burgos-Montanez argues that he has established at trial "that the Government has no evidence of his knowledge . . . involvement [in] and/or agreement" as to any matters occurring prior to November 9, 2015 (Dkt. No. 1479 at 3), the Court's adjudication at this time of the claimed variance would be premature. Indeed, the Court notes that the mere fact the Indictment alleges Burgos-Montanez's participation in only one event does not compel a finding that he was not a member of the broader conspiracy charged. A "defendant's participation in a single transaction can, on an appropriate record, suffice to sustain a charge of knowing participation in an existing conspiracy."

---

[2] Although Burgos-Montanez does not make an explicit variance argument in his filings, cases that he cites in his Supplement—including *Blumenthal v. United States*, 332 U.S. 539 (1947), *United States v. Ulbricht*, 31 F. Supp. 3d 540 (S.D.N.Y. 2014), and *United States v. Chandler*, 388 F.3d 796 (11th Cir. 2004)—address variance issues.

*United States v. Miranda-Ortiz*, 926 F.2d 172, 176 (2d Cir. 1991) (citations omitted). A single act may be sufficient to establish a defendant's membership in a wider conspiracy where there is "independent evidence tending to prove that the defendant in question had some knowledge of the broader conspiracy," *or* where "such knowledge may be inferred" from the single act itself. *United States v. DeNoia*, 451 F.2d 979, 981 (2d Cir. 1971) (citations omitted); *see also United States v. DiPasquale*, 740 F.2d 1282, 1292 (3d Cir. 1984) (holding that where the government alleges that a defendant was a member of a conspiracy through evidence of his participation in a single incident, the *DiNoia* rule comports with the Third Circuit's requirement that there be "sufficient evidence for the jury to find that [the defendant] was aware of the nature of the conspiracy when he acted in furtherance of it.")

Where a defendant asserts that the government, despite alleging a single conspiracy, has presented evidence that proves the existence of multiple conspiracies, a defendant may move for judgment of acquittal under Federal Rule of Criminal Procedure 29, asserting that no reasonable jury could find based on the evidence introduced at trial that the single conspiracy charged in an indictment existed. *See, e.g., United States v. Fritz*, 29 F. App'x 810, 811-12 (3d Cir. 2002) (holding that the district court properly denied a defendant's motion for judgment of acquittal and deferred to the jury's verdict where evidence establishing the existence of a single conspiracy as opposed to multiple conspiracies, while "not overwhelming," was sufficient for a reasonable jury to conclude that a single conspiracy existed). A defendant may also request that the jury be instructed on the possibility that multiple conspiracies existed. *United States v. Melendez*, 2004 WL 162937, at *4 (E.D. Mich. Jan. 20, 2004) (citing *United States v. Rios*, 842 F.2d 868, 872 (6th Cir. 1988); *United States v. Tocco,* 581 F.Supp. 379, 381 (N.D. Ill. 1984)); *see also Smith*, 789 F.2d at 200 ("The question of whether a single conspiracy or multiple conspiracies existed is a fact question to be decided by the jury."). However,

presentation of the issue to the court for resolution prior to the conclusion of the prosecution's case-in-chief is premature.

Further, the Court will be called upon later in these proceedings to determine whether the statements of Burgos-Montanez's alleged coconspirators may be admitted against him under Rule 801(d)(2)(E). Such statements will be admissible against Burgos-Montanez only if the Government is able to establish by a preponderance of the evidence that a conspiracy existed, that Burgos-Montanez and the declarant were members of the conspiracy, and that the statements were made during the course and in furtherance of the conspiracy. *United States v. Turner*, 718 F.3d 226, 231 (3d Cir. 2013) (citing *United States v. Ellis,* 156 F.3d 493, 496 (3d Cir. 1998)). Burgos-Montanez's request that the Court make an immediate determination with regard to the admissibility of such statements is similarly premature.

Given the nature of the conspiracy charged here, the Court in its discretion has elected to admit the statements of alleged coconspirators as they are introduced at trial, *subject to the condition* that the Government is successful in establishing by a preponderance of the evidence that a conspiracy existed; that Defendants were members of the conspiracy; and that the statements were made during the course and in furtherance of the conspiracy. This conditional admission finds approval in case law, which has "recognized the order-of-proof problem facing a trial judge in complex cases 'where the government is attempting to prove the participation of multiple defendants in a continuing conspiracy.'" *United States v. Manamela*, 463 F. App'x 127, 133 (3d Cir. 2012) (quoting *United States v. Gambino*, 926 F.2d 1355, 1360 (3d Cir. 1991)). Where "the conspiracy [may become] clearly defined only after the testimony of several witnesses," the decision "to admit co-conspirator statements subject to a later connection" is a matter of the district court's discretion. *Id.* (citing *Gambino*, 926 F.2d at 1360–61).

Because the statements of Burgos-Montanez's alleged coconspirators are currently being admitted at trial subject to connection, there will be argument by the parties following the Government's case-in-chief as to whether the Government has met the requirements for admission of the statements under Rule 801(d)(2)(E). At that time, Burgos-Montanez is free to raise any arguments he deems appropriate with respect to the Rule 801(d)(2)(E) determination in light of all of the evidence introduced by the Government in its case-in-chief.

The Court concludes that Burgos-Montanez's request for limiting instructions on all statements and evidence related to events occurring prior to the time he allegedly joined the conspiracy is premature. Accordingly, the Court will deny Burgos-Montanez's request without prejudice. Burgos-Montanez may renew his request when appropriate, following the conclusion of the Government's case-in-chief.[3]

---

[3] Burgos-Montanez argues, in the alternative, that statements made by alleged coconspirators prior to his purported involvement in the conspiracy, even if relevant, should not be admitted against him pursuant to Federal Rule of Evidence 403 ("Rule 403"). (Dkt. No. 1450 at 6-7). He asserts that witness testimony about "unrelated and concluded events would pose a very significant risk of unfair prejudice and confusion" to him. *Id.* at 6. Here again, Burgos-Montanez's argument is premature as it anticipates that the evidence introduce at trial will reveal that the events charged in the Indictment are "unrelated"—a conclusion that cannot be drawn at this time. As such, the Court will deny without prejudice Burgos-Montanez's request for the preclusion of statements made by alleged coconspirators prior to the time he allegedly joined the conspiracy on Rule 403 grounds.

The Court also notes that the facts of the case cited by Burgos-Montanez in support of his Rule 403 argument—*United States v. Wassner*, 141 F.R.D. 399 (S.D.N.Y. 1992)—are distinguishable from those of the instant case. In *Wassner*, a tax fraud conspiracy case, the district court concluded that the prosecution "ha[d] no direct proof to sustain a conviction" against the defendants. *Id.* at 404. Instead, the prosecution sought "to put before the jury proof that [the alleged coconspirators] were criminals and that others who dealt with them were criminals. From this evidence, the government would ask the jury to infer that the [defendants] must be criminals since they associated with people who, in turn, associated with [the alleged coconspirators]." *Id.* In essence, "the government [sought] a ruling that evidence of wrongdoing not charged in th[e] indictment, and involving only [the alleged coconspirators], should be admitted to prove the charges against the [defendants]." *Id.* at 404-05.

In the instant case, Burgos-Montanez is charged in Count 6 of the Indictment with the substantive offense of possession of cocaine with intent to distribute in relation to an alleged mid-sea retrieval of cocaine allegedly occurring on November 14, 2015. (Dkt. No. 1216 at 13). The Government's case

## B. Conspiracy Liability and Substantive Offense Liability

Although the Court has concluded that Burgos-Montanez's request for limiting instructions is premature, the Court writes further to address his argument that conspiracy liability extends only to the "foreseeable actions of [alleged co-conspirators] that occur in the future and not the past." (Dkt. No. 1450 at 2). This position misinterprets the law on conspiracy liability.

"Traditionally the law has considered conspiracy and the completed substantive offense to be separate crimes." *Iannelli v. United States*, 420 U.S. 770, 777 (1975). Indeed, participation in "the conspiracy can be punished more harshly than the accomplishment of its purpose." *Id.* (citing *Clune v. United States*, 159 U.S. 590 (1895)). As described by the Supreme Court, the rationale behind this treatment of conspiracy rests on a conception that "collective criminal agreement—partnership in crime—presents a greater potential threat to the public than individual delicts." *Id.* at 778 (quoting *Callanan v. United States*, 364 U.S. 587, 593 (1961)). Further, "[g]roup association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish." *Callanan*, 364 U.S. at 593. As such, the Supreme Court has noted that "the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise." *Id.* at 594. In other words, the "basic rationale of the law of conspiracy is that a conspiracy may be an evil in itself, independently of any other evil it seeks to accomplish.'" *Iannelli*, 420 U.S. at 779 (quoting *Dennis v. United States*, 341 U.S. 494, 573 (1951) (concurring opinion)).

---

includes evidence that allegedly implicates Burgos-Montanez directly in this event. Although Burgos-Montanez contends that events occurring prior to his involvement were unrelated, the Government will presumably attempt to show that the events all formed part of the overarching conspiracy charged in Count 1. This is not a case—like *Wassner*—where the only evidence the Government intends to introduce against Burgos-Montanez is evidence of wrongdoing not charged in the Indictment and involving only his alleged coconspirators.

Because a conspiracy and its underlying substantive offenses are treated as separate crimes, the scope of an individual defendant's liability as a conspirator may be broader than the scope of his liability for substantive offenses committed during the course of the conspiracy. As the Second Circuit has explained, if the Government establishes a defendant's membership in a conspiracy, "with regard to liability for *conspiracy,* a defendant may be legally responsible for acts of coconspirators prior to that defendant's entry into the conspiracy . . . ." *United States v. Blackmon*, 839 F.2d 900, 908 (2d Cir. 1988) (citing *United States v. Guillette,* 547 F.2d 743, 751 (2d Cir. 1976), *cert. denied,* 434 U.S. 839 (1977)). However, "with regard to *substantive offenses,* a defendant cannot be retroactively liable for offenses committed prior to his joining the conspiracy." *Id.* (citing *Levine v. United States,* 383 U.S. 265, 266 (1966) (per curiam)) (additional citations omitted); *see also United States v. Pepsny*, 108 F. App'x 713, 715 (3d Cir. 2004) (holding that a defendant may not be held "vicariously liable for substantive crimes committed by co-conspirators before the defendant[] entered the conspiracy").

Burgos-Montanez is therefore correct inasmuch as he argues that he may not be held liable for the substantive offenses of alleged coconspirators prior to his alleged involvement in the conspiracy. However, he is incorrect in arguing that conspiracy liability extends only to foreseeable future—not past—acts of alleged coconspirators. *See United States v. O'Campo*, 973 F.2d 1015, 1022–23 (1st Cir. 1992) ("While we recognize that a party may be chargeable with having adopted the acts of his co-conspirators before he joined the conspiracy for purposes of criminal *liability as a conspirator*, this responsibility does not extend to criminal *liability for prior substantive offenses* committed in furtherance of the conspiracy.") (citation omitted) (emphases in original).[4]

---

[4] To the extent that Burgos cites *O'Campo* for the blanket proposition that "he cannot be penalized and is not criminally responsible for actions that occurred prior to the time he allegedly joined [the] conspiracy" (Dkt. No. 1450 at 5), this is simply incorrect. While the *O'Campo* Court held that drug transactions occurring prior to the time a defendant joined the conspiracy would not be considered as relevant conduct for purposes of calculating his guideline sentence range, it explicitly recognized that that such transactions could be considered for purposes of determining his criminal liability as a conspirator. *O'Campo*, 973 F.2d at 1022-23.

Regardless of whether prior acts by alleged coconspirators were foreseeable to Burgos-Montanez, evidence relevant to those acts may be admissible against him in relation to the *conspiracy* charged in Count 1 of the Indictment. *See United States v. Tremusini*, 688 F.3d 547, 555 (8th Cir. 2012) ("Statements made by coconspirators before a defendant joins the conspiracy are admissible as long as the conspiracy or scheme existed at the time the statements were made.") (citing *United States v. Leroux,* 738 F.2d 943, 949–50 (8th Cir. 1984)); *see also United States v. Onque*, 665 F. App'x 189, 198 (3d Cir. 2016) ("[S]tatements by coconspirators are 'admissible against all' coconspirators, even when 'made . . . prior to the adherence of some to the conspiracy.'") (quoting *United States v. Jannotti*, 729 F.2d 213, 221 (3d Cir. 1984) (internal quotation omitted)). While Burgos-Montanez argues that evidence relating to events prior to his alleged involvement in the conspiracy would be relevant as offered against him only if it is "probative of his state of mind" with respect to his participation in the alleged conspiracy, the Court notes that such evidence may also be relevant to the existence and scope of the conspiracy charged in Count 1, as well as the identities and roles of *other* alleged participants in the conspiracy. *See O'Campo*, 973 F.2d at 1023 n.5; *Turner*, 718 F.3d at 231 (holding that "the Government may rely on the co-conspirator's statements themselves" as evidence, *inter alia*, of the existence of a conspiracy, "if they are corroborated by independent evidence"). Accordingly, if the Government is able to meet the requirements of Rule 801(d)(2)(E), the statements of alleged coconspirators and other evidence related to events prior to Burgos-Montanez's alleged involvement in the conspiracy may be relevant and admissible against him as they relate to his conspiracy liability. The Court rejects Burgos-Montanez's argument to the contrary.[5]

---

[5] The Court reads the argument advanced by Burgos-Montanez in his Reply—namely, that the Government's decision to identify "various independent events" in the Indictment limited the scope of the evidence admissible against him to the single event he allegedly participated in—as a precursor to the variance argument that he develops more fully in his Supplement. As discussed above, the Court has determined that Burgos-Montanez's variance argument is premature. However, if Burgos-Montanez is asserting that the scope of the evidence admissible against him has been limited simply

11

## III. CONCLUSION

For the reasons stated above, the Court will deny without prejudice Burgos-Montanez's request for limiting instructions on all statements and evidence related to events occurring prior to the time he allegedly joined the conspiracy charged in Count 1 of the Indictment. The Court will also overrule Quinones-Davila's objection to Burgos-Montanez's request for limiting instructions, and deny as moot Burgos-Montanez's motion to strike Quinones-Davila's objection. An appropriate Order accompanies this Memorandum Opinion.

Date: June 4, 2018
                 _____/s/_____
                 WILMA A. LEWIS
                 Chief Judge

---

because of the Government's decision to identify individual events that it alleges formed part of the overarching conspiracy charged in Count 1, the Court rejects this argument.

Although Burgos-Montanez argues that the events identified in the Indictment are isolated and unrelated, the Government presumably will seek to establish that these events formed part of the overarching conspiracy charged in Count 1. As noted above, the Government may establish that Burgos-Montanez was a member of that overarching conspiracy despite the fact that it alleges he directly participated in only one event. *DeNoia*, 451 F.2d at 981; *DiPasquale*, 740 F.2d at 1292. Again, the scope of the *conspiracy* charge in Count 1 is not delimited by the scope of the *substantive charge* against Burgos-Montanez in Count 6. If the Government establishes that Burgos-Montanez was a member of the conspiracy charged in Count 1, the acts and statements of his alleged coconspirators become admissible against him regardless of whether he had knowledge of all of the details of the broader conspiracy. *See United States v. Quintero*, 38 F.3d 1317, 1337 (3d Cir. 1994) (finding that "[t]he prosecutor need not prove that each defendant knew all the details, goals or other participants" to establish the existence of a single drug conspiracy, but must "demonstrate that a defendant . . . knew that he was part of a larger drug operation.") (citation omitted). Burgos-Montanez has presented no cogent reason why the Government's decision to identify various events that it alleges formed part of the broader conspiracy should preclude application of the general rule that acts and "[s]tatements made by coconspirators before a defendant joins the conspiracy are admissible as long as the conspiracy or scheme existed at the time the statements were made." *Tremusini*, 688 F.3d at 555; *see also United States v. Sophie*, 900 F.2d 1064 (7th Cir. 1990) (holding that out-of-court statements made by a coconspirator were admissible against a defendant in a multi-defendant and multi-event heroin conspiracy, even though the statements were made prior to the time the defendant joined the conspiracy).

12